# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **GINA B. McKELL,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| v. | ]   CV-04-BE-2487-S |
| | ] |
| **AUTO-OWNERS INSURANCE CO.,** | ] |
| | ] |
| | ] |
| **Defendants.** | ] |

## MEMORANDUM OPINION

### I.  INTRODUCTION

This case is before the court on Defendant's Motion for Summary Judgment (doc. 11). For the reasons set forth below, the court finds that the Motion is due to **GRANTED**.

### II.  FACTS

The following operative facts are taken as true because Plaintiff did not respond to or contradict these facts. Accordingly, the only question remaining is one of law.

Plaintiff Gina B. McKell is a resident citizen of Jefferson County, Alabama. She has owned the same home in Birmingham, Alabama for approximately ten years. The residence includes a concrete below-ground swimming pool with a concrete slab deck surrounding it. The pool and surrounding deck were included with the residence when Plaintiff bought the property.

Defendant Owners Insurance Company is a Michigan corporation doing business in Alabama. Defendant states that Owners Insurance Company is a subsidiary of Auto-Owners Insurance Company, and that Owners is the correct identification for the Defendant. Because

1

Plaintiff has not disputed this contention, the court considers Owners Insurance Company to be the appropriate Defendant in this case.

At all times relevant to this lawsuit, Plaintiff maintained a homeowner's insurance policy with Defendant. Plaintiff paid annual premiums for this policy, which included additional coverage for "Other Structures Coverage" and "Earthquake Coverage." The pertinent provisions of the policy are as follows:

> **b. Coverage B - Other Structures**
> (1) Covered Property
> We cover:
> (a) other structures at the residence premises which are not attached to the dwelling. This includes structures which are connected to the dwelling only by a utility line, fence or other similar connection.
> (b) other structures which you own and you use in connection with the residence premises that are located at an insured premises other than the residence premises.[1]
>
> **1. [EARTHQUAKE] COVERAGE**
> We cover accidental direct physical loss to covered property described under Section 1 - PROPERTY PROTECTION:
>     a. Coverage A - Dwelling;
>     b. Coverage B - Other Structures; and
>     c. Coverage C - Personal Property;
> which is caused by earth movement meaning earthquake, including land shock waves or tremors before, during or after volcanic eruption. One or more earthquake shocks that occur within a 168-hour period shall be considered to be one earthquake.[2]
>
> **3. Exclusions**
> a. Coverage A - Dwelling, Coverage B - Other Structures and Coverage C - Personal Property
> We do not cover loss to covered property caused directly or indirectly by any of the following, whether or not any other cause or event contributes

---

[1] Ex. B, p. 3.

[2] Ex. D, p. 1.

>   concurrently or in any sequence to the loss:
>   (3) Water damage, meaning:
>   >   (d) water below the surface of the ground.  This includes water which exerts pressure on or flows, seeps or leaks through any part of a building, sidewalk, driveway, swimming pool or other structure.[3]

On or about April 29, 2003, a magnitude 4.6 earthquake occurred approximately 9 miles east of Fort Payne, Alabama.  On May 19, 2003, Plaintiff reported to Defendant's agent that her pool had been damaged by the earthquake.  On July 8, 2003, Plaintiff filed a claim for benefits pursuant to her earthquake coverage.  Defendant hired JADE Engineering to investigate the property damage.  On July 28, 2003, Joel Wehrman (of JADE Engineering) conducted an inspection of the damaged area, and reviewed information from the United States Geological Survey, Saul's Seismograph Services, Gamble's Seismograph Services, the Bureau of Mines, and weather records for Birmingham during the days and weeks preceding the earthquake.  Wehrman concluded that damage to Plaintiff's pool was caused by heavy rainfall that saturated the ground and raised the water table.  In his opinion, the combination of the increased water table and the lower water level in the pool created uplift pressure under the pool, which caused it to raise out of the ground.  He also stated that the low level of vibration caused by the earthquake could not have caused the damage to Plaintiff's swimming pool.[4]

On September 18, 2003, Defendant denied Plaintiff's claim for benefits.  This denial was based on the policy's exclusion provision which precluded coverage for water damage.  In the denial letter, Defendant requested that Plaintiff send to Defendant any information which might

---

[3]Ex. B, p. 9.

[4]Ex. F(1), p. 7.

contradict Defendant's findings.  Defendant did not receive any information from Plaintiff.  On April 29, 2004, Plaintiff filed this lawsuit, seeking monetary damages for breach of contract, bad faith refusal to pay, and bad faith refusal to investigate.  Five weeks later, Defendant filed this Motion for Summary Judgment as to all claims.  Plaintiff did not respond to Defendant's Motion.

### III.  STANDARD OF REVIEW

Summary judgment allows a trial court to decide cases where no genuine issues of material fact are present.  Fed. R. Civ. P. 56.  A court must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  *Id*.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The movant can meet this burden by offering evidence showing no dispute of material fact, or by showing that the nonmoving party's evidence fails to meet some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-23.  Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)).  The responding party does not need to present evidence in a form admissible at trial; "however, he may not merely rest on [his] pleadings."  *Id*.

In reviewing the evidence submitted, "the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Graham v. State Farm Mutual Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). After both parties have addressed the motion for summary judgment, the court must grant the motion if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

## IV. DISCUSSION

**A. General Alabama Law on Insurance Contract Construction.**

Alabama law provides clear guidelines for a court interpreting language in an insurance policy. "[I]nsurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions." *Celtic Life Ins. Co. v. McLendon*, 814 So. 2d 222, 224 (Ala. 2001). In interpreting the language of an insurance policy, the court must give the words used in the policy their customary and normal meaning, and the court must construe the policy in a manner consistent with the interpretation that a person of ordinary intelligence would place on the policy's language. *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 692 (Ala. 2001); *Boone v. Safeway Ins. Co. of Ala.,* 690 So. 2d 404, 406 (Ala. 1997); *Sullivan v. State Farm Auto. Ins. Co.*, 513 So. 2d 992, 994 (Ala. 1987). If, under this standard, the words are reasonably certain in their meaning, they are not ambiguous as a matter of law, and the rule of construction favoring the insured does not apply. *Bituminous Cas. Corp. v. Harris*, 372 So. 2d 342, 344 (Ala. Civ. App. 1979). However, "[w]here there is

any doubt or confusion as to the meaning of a term in an insurance policy, the general rule of contracts applies to the policy, so that the contract is interpreted against the party which drafted the contract." *Boone*, 690 So. 2d at 406. "Any language of an insurance contract that is susceptible to more than one interpretation must be construed in favor of coverage for the insured." *Id*.

As explained by the Alabama Supreme Court, "insurance companies are entitled to have their policy contracts enforced as written, rather than risking their terms either to judicial interpretation or the use of straining language, and the fact that different parties contend for different constructions does not mean that the disputed language is ambiguous." *Woodall v. Alfa Mut. Ins. Co.*, 658 So. 2d 369, 371 (Ala. 1995) (quoting *Gregory v. Western World Ins. Co.*, 481 So. 2d 878, 881 (Ala. 1985)). In the absence of a statutory provision to the contrary, insurance companies have the right to limit their liability and to write policies with narrow coverage. *United States Fid. & Guar. Co. v. Bonitz Insulation Co.*, 424 So. 2d 569, 573 (Ala. 1982); *Altiere v. Blue Cross & Blue Shield of Ala.*, 551 So. 2d 290, 292 (Ala. 1989); *Upton v. Mississippi Valley Title Ins. Co.*, 469 So. 2d 548, 554 (Ala. 1985).

The Alabama Supreme Court recently emphasized this important canon of construction in *Royal Ins. Co. of America v. Thomas*, where it reasoned:

> It has been stated that a contract for insurance, being the law between the parties, should have every stipulation construed as written. It being presumed that every condition was intended to accomplish some purpose, it is not to be considered that idle provisions were inserted. Each word is deemed to have some meaning, and none should be assumed to be superfluous. All portions of a policy should be considered in construing it. Accordingly, a court will attempt to give meaning and effect, if possible, to every word and phrase in the contract in determining the meaning thereof, and a construction which neutralizes any provision of a contract should never be adopted if the contract can be so construed as to give an effect to

all of the provisions.

*Royal Ins. Co. of America v. Thomas*, 879 So. 2d 1144, 1154 (Ala. 2003) (quoting, J. Appleman, <u>Insurance Law and Practice</u>, § 7383 (1981)).  Thus, courts may not re-write policy language so as to provide coverage that was not intended by the parties.  *Am. Nat'l Prop. & Cas. Co. v. Blocker*, 165 F. Supp. 2d 1288, 1295 (S.D. Ala. 2001); *Altiere v. Blue Cross & Blue Shield of Ala.*, 551 So. 2d 290, 292 (Ala. 1989).  But "[a] policy must be construed fairly, must effectuate its purpose, and must reflect common sense so as not to bring about an absurd result."  *Boone*, 690 So. 2d at 406.

In evaluating the policy provisions at issue in this case, the court has been guided by these general principles of construction.

**B.  Breach of Contract.**

The record shows that a valid contract existed between Plaintiff and Defendant during the time relevant to this lawsuit.  Neither Plaintiff nor Defendant dispute the existence of a valid insurance contract.  Because no party disputes the existence of a valid contract, the court need only examine whether the loss at issue was covered by the policy.

Under Alabama law, the insured bears the burden of proving that the loss falls within the scope of coverage.  *See Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc.*, 990 F.2d 598, 602 (11th Cir. 1992) (holding that the insured bore the burden of demonstrating intentional interference claim fell within policy definition of "occurrence"); *Jordan v. Nat'l Accident Ins. Underwriters, Inc.*, 992 F.2d 732, 735 (11th Cir. 1991) (stating that "[u]nder Alabama law the general rule is that the insured bears the burden of providing coverage..."); *Colonial Life & Acc. Ins. Co. v. Collins*, 280 Ala. 373, 376 (Ala. 1967) (placing the burden of proof on the insured to

show insured's death was within policy coverage).  Plaintiff in this case did not offer any evidence to prove that the damage fell within the policy's earthquake coverage, nor did she offer any evidence to contradict Defendant's assertion that the damage was specifically excluded by the policy's water damage exclusion.  Consequently, Plaintiff did not meet her burden of proof.

In contrast, Defendant adequately satisfied its burden of proof.  "In general, the insurer bears the burden of proving the applicability of any policy exclusion." *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 12 (Ala. 2001); *see also Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 697 (Ala. 2001) (stating that the insurer failed to meet its burden of proving the claim was excluded pursuant to the policy); *United Sec. Life Ins. Co. v. Moore*, 157 So. 2d 674, 676 (Ala. 1963) (holding that "the burden of proof is on the insurer to establish that the insured's claim is within the limiting provisions of the policy.")  Defendant offered extensive evidence in the form of the report of an on-site investigation and an engineering report to support its contention that the leaks were caused by water damage and not, as Plaintiff contends, by an earthquake.  Pursuant to the policy's plain language, claims for water damage were specifically excluded from coverage.  Defendant is, therefore, entitled to summary judgment on the breach of contract claim.

### C. Bad faith.

Plaintiff also asserted a claim for bad faith failure to pay her insurance claims.  Under Alabama law, the following elements must be met for a plaintiff to assert a bad faith claim:

> (1) an insurance contract between the parties and a breach thereof by the defendant;
> (2) the intentional refusal to pay the insured's claim;
> (3) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);

>   (4) the insurer's actual knowledge of the absence of any legitimate or arguable reason.
>   (5) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

*Nat'l Security Fire & Casualty Co. v. Brown*, 417 So.2d 179, 183 (Ala. 1982). "In short, plaintiff must go beyond a mere showing of nonpayment and prove a *bad faith* nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim." *Id*.

A plaintiff has two methods by which to establish a bad faith claim: the normal case test or the abnormal case test. The "normal" case test is intended as an objective standard by which to measure a plaintiff's compliance with his burden of proving the defendant's denial of payment was without any reasonable basis in law or fact. *National Ins. Assoc. v. Sockwell*, 829 So.2d 111, 128 (Ala. 2001). This test is also known as the "directed verdict on the claim test." *Id*. In other words, the claim of bad faith must be supported by sufficient evidence that the insured would be entitled to a directed verdict on the contract claim; the insurance company has no legitimate, debatable reason to deny the claim.

The "abnormal" cases are limited to those instances in which the plaintiff produces substantial evidence showing that the insurer "(1) intentionally or recklessly failed to investigate the plaintiff's claim; (2) intentionally or recklessly failed to properly subject the plaintiff's claim to a cognitive evaluation or review; (3) created its own debatable reason for denying the plaintiff's claim; or (4) relied on an ambiguous portion of the policy as a lawful basis." *Id*. at 129-30.

Because the court has determined that the Defendant is entitled to summary judgment on

the breach of contract claim, no bad faith liability can attach under the "normal" test.  At the very least, Defendant had a reasonably legitimate reason to deny the claim.  Additionally, Plaintiff produced no evidence -- must less substantial evidence -- that Defendant's conduct supported a case for abnormal bad faith.  Defendant's evidence establishes that it properly investigated Plaintiff's claim and denied it pursuant to the plain language of the policy.

"[O]ne who cannot prove she was entitled to benefits under an insurance policy cannot recover on a bad-faith claim." *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 16 (Ala. 2001).  Because Defendant did not breach the contract, Plaintiff cannot prove she was entitled to benefits.  Accordingly, Plaintiff's bad faith claims fail as a matter of law.

## V.  CONCLUSION

In summary, the court finds that Plaintiff did not offer any evidence to meet her burden of proving that the damage to her pool fell within the policy's earthquake coverage provision.  The court also finds that Defendant offered unrefuted evidence that the damage at issue falls within the policy's water damage exclusion.  Defendant's Motion for Summary Judgment is, therefore, due to be **GRANTED**.

DONE and ORDERED this 17th day of October, 2005.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE